IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **WORKSITE, INC. WORKSITE CONNECT LLC and JAMES R. BARCHIESI** <br> Plaintiffs <br><br> vs. <br><br> **STEPTOE AND JOHNSON PLLC and BRIAN J. PULITO** <br> Defendants. | NO. 1:23-cv-9221 <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

**AND NOW** comes Plaintiffs Worksite, Inc, Worksite Connect LLC, and James R. Barchiesi, by and through their undersigned counsel Robert C. Barchiesi, II, Esq., who files the within Complaint for claims under the Computer Fraud and Abuse Act (18 U.S.C. § 1030) (CFAA) and the Defend Trade Secrets Act (18 U.S.C. § 1836 et seq.) upon the following facts and circumstances:

### NATURE AND CAUSE OF ACTION

1. This is a civil action seeking declaratory, injunctive, and monetary relief for the unauthorized solicitation, acquisition, disclosure, and use of Plaintiff's confidential and proprietary information and intellectual property by the Defendants in violation of federal and state law.

2. In a chain of events marked by blatant disregard for legal and ethical boundaries, the Defendant's in this case, who were representing a defendant client in a civil action against the Plaintiff company, unscrupulously solicited Plaintiff's former employees to breach confidentiality agreements. This covert solicitation culminated in the unlawful provision of confidential and sensitive financial data, privileged documents, attorney-client work product, customer lists, business plans, and highly

safeguarded data from the former employees to the Defendant's, all occurring without the knowledge or consent of the Plaintiff company.

3. The malfeasance extended further when a company laptop, property of the Plaintiff company, found its way into the possession of the Defendant's. The laptop, laden with sensitive data, was never returned to its lawful owner, the Plaintiff company. The unauthorized possession led to a subsequent unauthorized forensic analysis and copying by a third party, unlawfully accessing the laptop to obtain and duplicate its contents without any form of authorization or adherence to legal processes.

4. The Defendant's, without an iota of authorization from the Plaintiff company or adherence to any legal process, utilized the ill-gotten documents throughout the course of the litigation against the Plaintiff and its representative, causing untold harm and damage. The existence of the confidential documents came to light during an October 2022 deposition, where the Defendant's attorney surprisingly produced confidential memoranda and emails, leaving the Plaintiff in a state of disbelief and realization of the violation.

5. Admissions made on the record in Federal Court by the Defendant's confirmed that the company laptop was indeed obtained from former employees situated in Massachusetts. This laptop underwent further unauthorized analysis and copying by a forensic examiner. Shockingly, these glaring infractions received approval, as the Defendant on record informed the court that discussions with his firm's general counsel had taken place, who sanctioned the illicit manner and method employed in obtaining such information, erroneously deeming it permissible conduct.

6. The confidential information, obtained through clandestine and unlawful means, found its way into the hands of other attorneys involved in the case, courtesy of unauthorized disclosure by the Defendant's. Acknowledging the source and illicit manner of acquisition, another attorney in the case

conceded through sworn affidavits how the stolen data reached them via the Defendant's from Plaintiff's former employees.

7. Every action taken by the Defendant's attorney was a glaring violation of legal, ethical, and professional standards, and an assault on the principles that govern lawful conduct, especially within the sanctity of legal practice. The firm's general counsel, by allegedly sanctioning such unlawful and unethical conduct, entangled the entire firm in a web of professional misconduct and legal violations, warranting stringent examination and consequential actions.

8. This carefully orchestrated misconduct and breach of trust during the litigation process have left an indelible mark on the Plaintiff company, necessitating the pursuit of justice and remedy for the egregious violations and harm inflicted by the Defendants.

## PARTIES

9. Plaintiff Worksite, Inc. ("Plaintiff") is incorporated under the laws of the Commonwealth of Pennsylvania with a registered address of 115 Imperial Drive, East Stroudsburg, Pennsylvania and is the controlling entity over which the data subject to this dispute belongs.

10. Plaintiff Worksite Connect LLC is a Limited Liability Company formed under the laws of the Commonwealth of Pennsylvania as subsidiary of Worksite, Inc., with a registered address of 24 N. 4th Street, Easton, PA 18042.

11. Plaintiff James R. Barchiesi is a real party in interest in the instant litigation and is domiciled in Monroe County Pennsylvania.

12. Defendant Steptoe and Johnson PLLC ("Defendant") is a registered Foreign Limited Liability Company under the laws of the Commonwealth of Pennsylvania with a registered address of 201 Chestnut Street, Meadville, PA.

13. Defendant Brian J. Pulito ("Defendant") is an attorney licensed to practice law in Pennsylvania and is named as both an agent of Steptoe and Johnson PLLC and in his individual capacity in this action. His principal place of business is located at 201 Chestnut Street, Meadville, PA.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 under general federal question jurisdiction.

15. This Court also has supplemental jurisdiction over the State law claims in this action pursuant to 28 U.S.C. § 1367(a), as the claims are so related and arise out of a common nucleus of operative facts.

16. Moreover, venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in this judicial district.

## JURY TRIAL DEMAND

17. Pursuant to Fed. R. Civ. P 38(b) Plaintiff hereby demands a trial by jury on any of the triable issues presented herein.

## FACTUAL ALLEGATIONS

18. On or about and between January 25, 2022 to the present, Defendants represented a client in a legal proceeding located within the United States District Court for the Southern District of New York, hereinafter referred to as "the Underlying Litigation," in which Plaintiff James R. Barchiesi and affiliated Plaintiff companies were the opposing party.

19. Upon information and belief, the Defendant attorney, either directly or indirectly, approached and solicited former employee(s) of the Plaintiff company, inducing them to breach confidentiality agreements.

20. During the course of the Underlying Litigation, Defendants, without proper authorization or legal process, obtained confidential documents, a laptop, and other company data (collectively referred to as "the Stolen Data") from the former employee(s) of Plaintiff.

21. The Stolen Data contained sensitive and confidential information belonging to Plaintiff, including but not limited to trade secrets, proprietary research, customer lists, financial records, and strategic business plans, as well as internal attorney/client privileged communications and work product.

22. The Plaintiff company, with due diligence and prudence, had undertaken substantial measures to safeguard its sensitive data and trade secrets through the imposition of confidentiality agreements, stringent access controls, and robust security protocols.

23. On information and belief, Defendants, while acting on behalf of Defendant's Client, engaged a third-party forensic examiner to forensically access the stolen laptop and copy its contents, including the Stolen Data.

24. On information and belief, Defendant and the third-party forensic examiner accessed the laptop and copied its contents without legal process and without any authorization from Plaintiff.

25. On information and belief, access to the company laptops and the confidential data contained within were meticulously safeguarded by intricate security measures, including usernames, passwords, and distinct user credentials for various applications and cloud-based programs holding a myriad of company data, ranging from emails to financial details, as well as internal attorney client communications.

26. To access the confidential information stored on the laptops and the accompanying programs, the Defendant attorney would have had to orchestrate unauthorized access and/or intrusion, indicating a deliberate breach of security to gain access to the device and the confidential company data therein.

27. Subsequently, Defendant used the Stolen Data, which included confidential and proprietary information, in the Underlying Litigation without Plaintiff's authorization or legal process.

28. Plaintiff was neither informed of nor consented to the acquisition, examination, or use of the Stolen Data by Defendants or the third-party forensic examiner.

29. Although the precise timing and the full scope of the manner by which Defendants obtained Plaintiffs data remains unknown to Plaintiff, there is no dispute that Defendants have, at least to some extent, accessed, tampered with, manipulated, altered, copied, and damaged Plaintiffs data, and that their actions are illegal, unauthorized, and without Plaintiffs consent.

30. Defendants' unlawful activities with respect to Plaintiffs data are, to a large extent, established by their own public statements and activities. It is Defendants who have publicly stated that they came into possession of the stolen data through former employees of the Plaintiff's company, and that they retained possession of company property, and directed a forensic examination of the Plaintiffs company laptop.

31. The Plaintiffs first became aware of the Stolen Data when the Defendants first presented and notably used the Stolen Data during a deposition that took place on or about October 12, 2022. In the deposition, Defendant relied on and referred to specific documents obtained from the Stolen Data, including confidential memoranda and other internal email communications of the company, one which specifically addressed proprietary trade secrets and customer lists.

32. Subsequently, in a court hearing held on or about November 4, 2023, Defendant made an admission on the official court record. In open court, Defendant acknowledged that he had obtained a company laptop and data from Plaintiff's former employees.

33. Defendant's unauthorized access, acquisition, and use of the Stolen Data, as well as the involvement of the third-party forensic examiner, constitute serious violations of federal and state laws governing trade secrets and computer fraud and abuse.

34. Defendant stated on the court record that he had sought advice from his own legal counsel regarding the acquisition and use of the Stolen Data. Defendant's legal counsel allegedly advised him that such actions were proper, despite the absence of legal process or Plaintiff's authorization.

35. Plaintiff emphasizes that Defendant's admission in open court underscores the unauthorized and improper nature of his actions in obtaining, examining, and using the Stolen Data during the course of the Underlying Litigation.

36. Defendant's actions, including the use of the Stolen Data in a deposition and the acknowledgment of unauthorized acquisition on the court record, further demonstrate the seriousness of the violations of federal trade secret and computer fraud and abuse laws.

37. Plaintiff asserts that Defendant's reliance on legal advice given by his firms General Counsel to justify his actions does not absolve him of liability for his actions, which were undertaken without Plaintiff's consent, proper authorization, or legal process.

38. At all times relevant and material to the Defendant's representation of his client, he was employed by the Defendant law firm and acted within the scope of his employment or agency when he sought legal advice from the firm's General Counsel regarding the use of the stolen data.

39. The Defendant's actions in obtaining and using the stolen data were in furtherance of the firm's interests in the underlying litigation, as they were directly related to the defense of the firm's client in the legal dispute with the Plaintiff.

40. By asserting reliance on the advice of the firm's General Counsel, the Defendant acknowledged that his conduct was sanctioned by the firm, and that he acted as an agent of the firm in the acquisition and use of the stolen data.

41. The Plaintiff contends that the firm is vicariously liable for the Defendant's conduct based on the legal principle of vicarious liability, which holds an employer or firm responsible for the wrongful acts of its employees or agents when those acts are committed within the scope of employment or agency and in furtherance of the employer's or firm's interests.

42. Plaintiff seeks remedies and redress for the harm and damages resulting from Defendants violations of applicable laws and the wrongful use of the Stolen Data in the Underlying Litigation.

43. Plaintiff has suffered significant harm and damages as a direct result of Defendant's actions, including potential harm to its business operations, reputation, and intellectual property rights.

44. Plaintiff brings this action to seek redress for the wrongful actions of Defendant and to protect its rights and interests under applicable laws.

### COUNT I: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)
*(As against Defendants Steptoe and Johnson PLLC and Brian J. Pulito)*

45. The Plaintiff realleges and incorporates by reference herein paragraphs 1-44 as if more fully set forth below.

46. WHEREAS, defendants approached former employees of the Plaintiff, inducing them to breach confidentiality agreements.

47. WHEREAS, defendants obtained confidential documents, a laptop, and other company data (the Stolen Data) without proper authorization or legal process during the Underlying Litigation.

48. WHEREAS, the Stolen Data included sensitive information such as trade secrets, proprietary research, customer lists, financial records, and attorney-client privileged communications.

49. WHEREAS, Plaintiff had implemented robust security measures to safeguard its data.

50. WHEREAS, on information and belief Defendants engaged a third-party forensic examiner to access and copy the Stolen Data without legal process or authorization.

51. WHEREAS, Defendants used the Stolen Data in the Underlying Litigation.

52. WHEREAS, Plaintiff learned of the Stolen Data during a deposition where Defendants presented and used it.

53. WHEREAS, Defendant admitted on record that he had obtained a company laptop and data from Plaintiff's former employees.

54. WHEREAS Defendants' actions, including the unauthorized access, acquisition, and use of the Stolen Data, violate federal and state laws governing computer fraud and abuse.

55. WHEREAS, Plaintiffs have suffered monetary losses believed to be excess of $5,000.00.

**WHEREFORE**, Plaintiff respectfully requests the following relief from this Honorable Court:

A. A declaration that Defendants have violated federal and state computer fraud and abuse laws.

B. An injunction to prohibit Defendants from further accessing, using, or disseminating any of the Stolen Data, as well as any confidential information and proprietary data of Plaintiff.

C. Compensatory damages, including but not limited to monetary damages, for the harm, losses, and damages suffered by Plaintiff as a result of Defendants' unauthorized access, acquisition, and use of the Stolen Data.

D. Exemplary or punitive damages to deter future misconduct and to punish Defendants for their willful and knowing violations of the law.

E. Attorneys' fees and costs incurred by Plaintiff in pursuing this action, as allowed by applicable law.

F. Any other further relief deemed just and proper by this Honorable Court.

<u>COUNT II: MISAPPROPRIATION OF TRADE SECRETS</u>
*(As against Defendants Steptoe and Johnson PLLC and Brian J. Pulito)*

56. The Plaintiff realleges and incorporates by reference herein paragraphs 1-53 as if more fully set forth below.

57. WHEREAS, Defendants, while representing their client in the Underlying Litigation, intentionally and knowingly acquired, examined, and used Plaintiff's trade secrets and proprietary information (the "Trade Secrets") without proper authorization or legal process.

58. WHEREAS, the Trade Secrets included but were not limited to trade secrets, proprietary research, customer lists, financial records, and strategic business plans.

59. WHEREAS, on information and belief Defendants approached and solicited former employees of Plaintiff, inducing them to breach confidentiality agreements with Plaintiff.

60. WHEREAS, these former employees were privy to and held knowledge of the Trade Secrets.

61. WHEREAS, Defendants obtained the Trade Secrets through a third-party forensic examiner without legal authorization or Plaintiff's consent.

62. WHEREAS, Defendant used these Trade Secrets in the Underlying Litigation, which further constituted unlawful and unauthorized use of Plaintiff's valuable and confidential information.

63. WHEREAS, Defendants' actions constitute a violation of federal and state trade secrets laws, as they intentionally and knowingly misappropriated Plaintiff's Trade Secrets for their own benefit and without lawful justification.

64. WHEREAS, Plaintiff has suffered substantial harm, including but not limited to financial losses, damage to its reputation, and potential loss of competitive advantage, as a direct result of Defendants' misappropriation of its Trade Secrets.

WHEREFORE, Plaintiff respectfully requests the following relief for this Count:

A. A declaration that Defendants have violated federal and state trade secrets laws by their intentional and unauthorized acquisition and use of Plaintiff's Trade Secrets.

B. An injunction to prohibit Defendants from further accessing, using, or disseminating any of Plaintiff's Trade Secrets or confidential information.

C. Compensatory damages for the harm, losses, and damages suffered by Plaintiff as a result of Defendants' misappropriation of its Trade Secrets.

D. Exemplary or punitive damages to deter future misconduct and to punish Defendants for their willful and knowing violations of trade secrets laws.

E. Attorneys' fees and costs incurred by Plaintiff in pursuing this action, as allowed by applicable law.

F. Any other further relief deemed just and proper by this Honorable Court

## COUNT III: CONVERSION
*(As against Defendants Steptoe and Johnson PLLC and Brian J. Pulito)*

65. The Plaintiff realleges and incorporates by reference herein paragraphs 1-64 as if more fully set forth below.

66. WHEREAS, Defendants, without proper authorization, intentionally acquired and possessed Plaintiff's property, including confidential documents, a laptop, and other company data (collectively referred to as "the Converted Property").

67. WHEREAS, Defendants retained possession and control over the Converted Property, denying Plaintiff access to its rightful property.

68. WHEREAS, Defendants used the Converted Property, including confidential information and proprietary data, in the Underlying Litigation without Plaintiff's authorization or legal process.

69. WHEREAS, Defendants' actions deprived Plaintiff of its ownership and possession of the Converted Property, causing significant harm and financial losses.

70. WHEREAS, Defendants' actions constituted a violation of Plaintiff's property rights, as they intentionally and knowingly exercised dominion and control over the Converted Property to Plaintiff's detriment.

WHEREFORE, Plaintiff respectfully requests the following relief for this Count:

A. A declaration that Defendants have wrongfully converted Plaintiff's property.

B. An order requiring Defendants to immediately return the Converted Property to Plaintiff.

C. Compensatory damages for the harm, losses, and damages suffered by Plaintiff as a result of Defendants' conversion of its property.

D. Exemplary or punitive damages to deter future misconduct and to punish Defendants for their willful and knowing conversion.

E. Attorneys' fees and costs incurred by Plaintiff in pursuing this action for conversion, as allowed by applicable law.

F. Any other further relief deemed just and proper by this Honorable Court.

Date: October 19, 2023

Respectfully,

By:_____
Robert C. Barchiesi, II, Esq.
PA BAR ID No. 328056
306 South New Street
Bethlehem, PA 18015
*Counsel for Plaintiff*
*\* Application for Pro Hac Vice forthcoming*